NEWMAN, Circuit Judge,
dissenting.
It is not seriously disputed by the Customs Service, or by the panel majority, or by government counsel, that Ford overpaid import duties by 6.2 million dollars, and timely filed for reconciliation and refund. The government has for nine years avoided refunding the overpayment. Even on this appeal, the government does not dispute the merits of the claim, and the record filed with the Court of International Trade is replete with timely, full and compelling documentation of Ford’s entitlement to the refund. Thus I respectfully dissent from my colleagues’ holding that Ford must now repeat this administrative process; it is time that the refund be paid.
In two trips to the Court of International Trade, as summarized by Ford, “the CIT has twice dismissed Ford’s claims, holding the first time that Ford was not patient enough with Customs to allow the administrative process to unfold, and thus filed its claims too early, and the second time that Ford was too patient with Customs’ inaction, and thus filed its claims too late.” Ford Br. 2. The administrative record, upon its release to the Court of International Trade, reveals multiple internal verifications of Ford’s refund entitlements.
Ford’s reconciliation methodology and entries were not disputed, and were accepted for Ford entries of a different product. Two separate divisions of Customs, the Area Director of the Port of Newark and the National Commodities Specialist Division, confirmed Ford’s entitlement to refund in early 2006. However, these internal notices were followed by nearly three years of silence and inaction, although Ford apparently pressed Customs for response. Customs issued no decision that could be protested, requiring Ford to file suit in the Court of International Trade under 28 U.S.C. § 1581(i). Thereafter Customs apparently withdrew its prior internal approvals.
These procedures appear to be irregular. This is not a complicated claim; Ford overestimated the expected' value of Jaguar imports and, after the value was accurately determined, according to ap-praisement methods found acceptable, Ford entered the statutory reconciliation procedure and documented the $6.2 million in overpayments. The reconciliation statute and regulations provide that Customs has one year to liquidate the reconciliation entries, 19 U.S.C. § 1504(a)(1), or to extend liquidation for up to three years if Customs lacks the information necessary to complete the liquidation. The statute and regulation only permit Customs to extend liquidation if “the information needed for the proper appraisement or classification of the imported or withdrawn merchandise ... or for ensuring compliance with applicable law, is not available.” 19 U.S.C. § 1504(b); see 19 C.F.R. § 159.12(a)(1), (d). The only times Customs requested additional information was in 2005, which was promptly provided, and in July 2009 after Ford filed this suit. There is no objection to Ford’s data, price information, or anything else.
The Customs actions are devoid of support. On this appeal, the government *1382 brief is silent; no justification is offered, although it appears that statute and regulation have not been met.
In 2009, during these legal proceedings, Customs reliquidated Ford’s entries, refusing to pay the refund. The reason given is that Ford did not provide certain documentation that was requested, with one month’s deadline, after three years of silence and inaction. The reliquidations were not based on any position that Ford’s ap-praisement and reconciliation were flawed. Although the panel majority announces that “Customs seeks to recalculate the duty owed, urging that the original rate was correct,” Maj. Op. at 1374, that is strange, for nowhere does Customs state that the overpayments were correct.
The government, in its brief on this appeal, presents no argument that the duty should be recalculated — leaving uncertainty as to the source of my colleagues’ statement. Customs simply reliquidated the entry at the original overpaid amount, ignoring the law and regulations of reconciliation and refund and ignoring its own internal documents that refunds were due.
The government’s brief does not mention the overpayment, the litigation history, or the statute or regulations. Although my colleagues now hold that the claim requires resolution, their proposal is that Ford should start again, to request the refund that was first requested in 2005. However, the record of overpayment and refund obligation is not now challenged. The government does not now argue otherwise.
The judicial role is to bring the matter to a close, not to start again. 28 U.S.C. § 2106 (appellate court may “reverse any judgment ... and direct the entry of such appropriate judgment, decree, or order ... as may be just under the circumstances”); see also Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 7, 11 (Dec. 31, 2015) (judges should “take on a stewardship role” to achieve “speedy, fair and efficient justice”). The panel majority apparently agrees that Ford is entitled to the refund. Indeed, the government does not dispute the merits of Ford’s entitlement, after six years of this litigation. On the unanimous holding that Ford is not barred from receiving the refund, the appropriate judicial role is to order the refund, and close the case.